IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-03076-RBJ

PEDRO HERNANDEZ and MONICA IDALY TORIBIO,

   Plaintiff,

v.

AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, a member of the American Family Insurance Group,

   Defendant.

## ORDER

Defendant asks the Court to enter partial summary judgment dismissing plaintiffs' insurance bad faith claims. For the reasons discussed herein, the motion is granted as to plaintiffs' claim for statutory penalties under C.R.S. §§ 10-3-1115 and -1116 but denied as to their claim for bad faith breach of insurance contract.

## FACTUAL BACKGROUND

Pedro Hernandez was seriously injured on June 27, 2009 when a pickup truck negligently driven by Mead Travis Myers III struck him as he sat in a chair at his produce stand. He and his wife sued, and Myers, who was driving his girlfriend's truck, obtained a defense under the girlfriend's liability policy with Country Mutual Insurance Company. Myers' attorneys also tendered the defense to, and demanded indemnity from, the American Standard Insurance Company of Wisconsin which had sold a "Family Car Policy" to Myers' mother, Judith Myers. American Standard denied coverage. Thereafter, the plaintiffs settled with Mead Myers in

exchange for a payment by Country Mutual of its policy limits of $100,000 and an assignment of Myers' rights, if any, against American Standard.

The dispute arises from the fact that the American Standard policy covers Judith Myers and her relatives. Policy [docket entry #15-3] at ¶I.B.1(a) (CM/ECF page 6). "Relative" is defined to mean "a person who, at the time of the accident, is related by blood . . . to the named insured . . . *and who resides in the insured's household, even if temporarily living elsewhere.*" *Id.* at ¶I.A. of Colorado Changes/Changes Applying to the Family Car Policy and Miscellaneous Vehicle Policy (CM/ECF page 21) (emphasis added). The issue is whether Mead Myers resided in Judith Myers' household at the time of the accident.

The American Standard policy lists Judith Myers' address at 8171 W. Walker Drive, Littleton, CO 80123-3549. *Id.* at CM/ECF page 1. She listed that address for other purposes as well, such as her driver's license, bank accounts, tax returns, a bankruptcy filing, and other documents. Mead Myers also listed the Walker Drive address on his driver's license and as the address of his business. Insurance premium billings were sent to "Myers, Judy Mead" or "Judy Mead Myers" at that address.

However, an American Standard claims adjuster interviewed Judith Myers. According to the adjuster's affidavit [#29-2], Judith told her that although she owned the Walker Drive house and made its mortgage payments, she was actually living at 8399 Quay Court, Littleton, CO – a house owned by Mead Myers – at the time of the accident. Judith reportedly told the adjuster that she and Mead had changed houses about four years earlier, and that at the time of the accident Mead and his girlfriend were living at the Walker Drive address. *Id.* at ¶¶6-7.

Based upon that interview the adjuster concluded that Mead was not Judith's "relative," as that term is defined in the policy, and American Standard denied coverage. Mead's attorney

requested reconsideration, arguing that Judith's official residence was 8171 W. Walker Drive where American Standard admitted Mead was living. American Standard again denied coverage on the basis that mother and son were not residing in the same household.

Mr. Hernandez and his wife filed the present lawsuit against American Standard in state court as Mead Myers' assignee. American Standard removed the case to this Court based on diversity of citizenship. 28 U.S.C. § 1332. Plaintiffs assert claims for damages based upon (1) breach of contract; (2) bad faith breach of insurance contract; and (3) statutory "damages" under Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116.

On March 30, 2012 American Standard moved for summary judgment, arguing that the Court should find that there was no genuine dispute of material fact as to whether Mead Myers was residing in Judith Myers' household at the time of the accident, and therefore, that the contract claim should be dismissed as a matter of law. [#15]. American Standard also argued that if there is no coverage under the insurance contract, there could be no liability for bad faith. After full briefing and oral argument, and in consideration of documents submitted with plaintiffs' response [##18-1 through 18-7] and concerns about Judith's credibility, the Court denied the motion in a bench ruling on March 20, 2013. *See* Minute Order. [#24].

## ANALYSIS AND CONCLUSIONS

### Second Claim: Bad Faith Breach of Insurance Contract

Colorado has long recognized a tort claim arising from the covenant of good faith and fair dealing implied in all insurance contracts, commonly referred to as bad faith breach of insurance contract. *See Goodson v. American Standard Ins. Co. of Wisconsin,* 89 P.3d 409, 414-15 (Colo. 2004). Plaintiffs argue that the standard of care applicable to Mead Myers' bad faith claim against American Standard is simple negligence – did American Standard act as a

reasonable insurer would have acted under the same or similar circumstances. I agree. Negligence is the applicable standard in judging the tort liability of an insurer in a third-party context, i.e., a claim by an insured for protection against a liability claim of a third party. *Farmers Group, Inc. v. Trimble,* 691 P.2d 1138, 1142 (Colo. 1984). *See* C.R.S. § 10-3-1113(2) (codifying this standard). Mead Myers' claim, which plaintiffs now assert as his assignee, is that American Standard acted unreasonably and therefore in bad faith in its investigation and ultimately its refusal to defend or indemnity him against the claim of the plaintiffs in the underlying suit.

I pause, however, to note that there is no small measure of irony in plaintiffs' position. In a direct or first-party context, where the insured sues his own insurer for bad faith breach of an insurance contract, the insured must establish not only that the insurer acted unreasonably but also that the insurer knew or recklessly disregarded the fact that its conduct was unreasonable. *Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1275-76 (Colo. 1985). *See* C.R.S. § 10-3-1113(3) (codifying this standard). Plaintiffs implicitly argue, consistent with Colorado law, that the higher standard of care applicable to a first-party claim does not apply, because they are asserting Mead Myers' third-party claim against American Standard. Yet, in plaintiffs' Third Claim, where they seek recovery under C.R.S. §§ 10-3-1115 and -1116, plaintiffs necessarily argue that Mead Myers was a "first-party claimant," because the statute applies only to first-party claimants. The answer to this seeming inconsistency, if there is an answer, is that the statute defines "first-party claimant" in a manner that arguably includes certain claims that have historically been viewed as third-party claims.[1]

---

[1] In *D.R. Horton, Inc. – Denver v. Mountain States Mutual Casualty Company,* No. 12-CV-1080, 2013 WL 674032, at *1-2 (D. Colo. Feb. 25, 2013) ("*D.R. Horton I*") I concluded that an insured who demands a defense by its liability carrier against a third party claim is a "first-party claimant" as that term is defined in C.R.S. § 10-3-1115(1)(b)(I). As I indicated there, and repeated in a later decision in the same

4

In any event, for purposes of plaintiffs' Second Claim alleging bad faith breach of insurance contract, American Standard's conduct will be judged under a negligence standard. To prevail on their bad faith claim plaintiffs must establish that the insurer did not conduct a reasonable investigation and, ultimately, that it did not have a reasonable basis for denying the claim. *See New Salida Ditch Co., Inc. v. United Fire & Cas. Co.,* No. , 2009 WL 5126498 (D. Colo. Dec. 18, 2009). For purposes of summary disposition, however, American standard has the initial burden of presenting evidence that it acted reasonably. I find that it has met this burden with the evidence of the adjuster's interview of Judith Myers.

The burden then shifts to the plaintiffs to come forward with evidence showing that there is a genuine and material issue for trial. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir. 2002). "The reasonableness of the insurer's conduct must be determined objectively, based on proof of industry standards." *Goodson,* 89 P.3d at 415. Here, plaintiffs have produced the report of an insurance expert who, over the course of 37 pages, discusses facts that he believes show that American Standard's handling of the claim was inconsistent with industry standards, including some of American Standard's own policies. Report of J. Kent Miller, filed as #34-10. Expert testimony of that kind is generally admissible so long as it rests upon an adequate foundation. *Southerland v. Argonaut Ins. Co.,* 794 P.2d 1102, 1107 (Colo. App. 1990). *See also American Family Mutual Ins. Co. v. Allen,* 102 P.3d 333, 343-45 (Colo. 2004) (discussing when expert testimony regarding insurance industry standards is necessary); *Etherton v. Owners Insurance Company,* No. 10-CV-892-PAB-KLM, 2013 WL 5443068, at *2-3 (D. Colo. Sept. 30, 2013) (discussing why certain insurance expert testimony would not be admissible).

---

case, 2013 WL 6169120, at *4 (Nov. 25, 2013) (*D.R. Horton II),* the decisions of federal and state courts on that issue are split, and the issue will ultimately be resolved by Colorado's appellate courts.

Reasonableness is ordinarily, though not always, a question of fact for the jury. *Vaccaro v. American Family Ins. Group,* 275 P.2d 750, 759 (Colo. App. 2012). Having reviewed the expert's report, as well as the same fact issues that led to the Court's denying American Standard's first motion for summary judgment, and construing the evidence and inferences in plaintiffs' favor, I find that plaintiffs have established the existence of a genuine dispute of material fact as to whether American Standard acted reasonably in the circumstances. That dispute should be resolved by the jury.

### Third Claim: Statutory "Damages"

American Standard argues that plaintiff's claim for statutory damages should be dismissed because, as a matter of law, (1) Mead Myers is not a "first-party claimant" within the meaning of C.R.S. 10-3-1115 and 10-3-1116; (2) there was a reasonable basis for denial of the benefit claimed; and (3) the claim seeks to recover a penalty and therefore is not assignable to the plaintiff. I agree with the third argument. Ultimately, this issue will be resolved by Colorado's appellate courts, but my prediction is that the answer will be that a claim under the statute is for a penalty and cannot be assigned.

In the context of determining the correct statute of limitations to apply, the Colorado Supreme Court set down a three-part test for determining whether a statutory claim is one for a penalty: "whether (1) the statute asserts a new and distinct cause of action; (2) the claim would allow recovery without proof of actual damages; and (3) the claim would allow an award in excess of actual damages." *Kruse v. McKenna,* 178 P.3d 1198, 1201 (Colo. 2008). The present case does not involve a dispute about a statute of limitations. However, the *Kruse* test has been applied in other contexts, *e.g., Warren v. Liberty Mut. Fire Ins. Co.,* No. 05-CV-1891-PAB-MEH, 2011 WL 1103160, at *10 (D. Colo. Mar. 24, 2011), and I am satisfied that it provides a

reasonable guide here as well.  This test is largely similar to that applied by my colleague Judge Babcock in a case not involving a statute of limitations issue.

There is no question but that the first and third elements of the *Kruse* test are satisfied here.  The statute creates a new and distinct cause of action.  Section 10-3-1116(1) provides that "[a] first-party claimant whose claim for payment of benefits has been unreasonably delayed or denied *may bring an action* in a district court to recover reasonable attorney fees and court costs and two times the covered benefit."  (emphasis added).  Section 10-3-1116(4) provides that "[t]he action authorized in this section *is in addition to, and does not limit or affect, other actions available by statute or common law*, now or in the future.  Damages awarded pursuant to this section shall not be recoverable in any other action of claim."  (emphasis added).  Likewise, the statute allows an award in excess of actual damages.  By its terms, the statute permits recovery of "two times the covered benefit."[2]

Plaintiff's argument is that the statutory claim does not allow recovery without proof of actual damages, and therefore, the second of the three-part test for classifying a statute as penal in nature is not met.  I disagree.  Section 10-3-1116 uses the "covered benefit" as a measure of one part of the penalty, and in some situations the "covered benefit" might be equal to the "actual damages" established pursuant to an independent contract or tort claim.  However, "[t]he calculation of a statutory penalty can be determined based on actual damages."  *Erlich Feedlot, Inc. v. Oldenburg,* 140 P.3d 265, 270 (Colo. App. 2006).  *See also Giampapa v. American Family Mut. Ins. Co.,* 64 P.3d 230, 238 (Colo. 2003) (provision in Colorado Auto Accident Reparations Act requiring insurer to pay the insured three times the amount of unpaid benefits

---

[2] I recently held that this meant two times the covered benefit in addition to the covered benefit itself. *D.R. Horton II,* 2013 WL 6169120, at *6 (D. Colo. Nov. 25, 2013).  Even if Colorado's appellate courts later interpret the statute to mean the covered benefit plus one times that benefit, as the insurer there argued, it is clear that the statute permits a recovery in excess of actual damages.

7

where the failure to pay is wilful and wanton functions primarily as a statutory penalty or an enforcement mechanism, not as a complete remedial measure); *Group, Inc. v. Spanier,* 940 P.2d 1120, 1123 (Colo. App. 1997) (statute permitting civil action for treble damages if the maker of a dishonored check fails make timely payment creates a penalty). Moreover, the statute permits the insured to recover two times the "covered benefit" even if the benefit was unreasonably delayed but not denied. Finally, the statute permits the insured to recover reasonable attorney's fees regardless whether the insured proved actual damages. *Cf. Warren,* 2011 WL 1103160 at *10 (claims for attorney's fees under the Colorado Auto Accident Reparations Act are for statutory penalties under the *Kruse* test, because the Act created a new and distinct cause of action, and recovery of attorney's fees under the Act does not require proof of damages, and the award would exceed actual damages).

      My view that the statute creates a penalty is bolstered as well by the fact that it has been viewed as a penalty in several state and federal decisions. In *Vaccaro* the court noted that the bill that created §§ 10-3-1115 and -1116 was titled, "An Act Concerning Strengthening Penalties for the Unreasonable Conduct of an Insurance Carrier." 275 P.3d at 756. In *Kisselman v. American Family Mut. Ins. Co.,* 292 P.3d 964, 972 (Colo. App. 2011), the court quoted testimony of the sponsor of the bill that "[w]hat the proposal does is increase the penalties on companies that unreasonably delay or deny payment." Several judges in this district have described the statute as imposing a "penalty." *See Etherton*, 2013 WL 5443068 at *3 (Brimmer, J.); *Washington v. American Family Mut. Ins. Co.,* No. 12-CV-2229-REB-KLM, 2013 WL 1412327, at *2 (D. Colo. March 18, 2013) (Mix, M.J.); *Rabin v. Fidelity Nat. Property and Cas. Ins. Co.,* 863 F. Supp.2d 1107, 1111 (D. Colo. 2012) (Babcock, J.); *Flowers v. Life Ins. Co. of North America,* 781 F. Supp. 2d 1127, 1132 (D. Colo. 2011) (Arguello, J.). I, too, previously

described § 10-3-1116 as creating a "penalty." *D.R. Horton II,* 2013 WL 6169120, at *6. Even plaintiffs' insurance expert, J. Kent Miller, described plaintiffs' Third Claim as a claim for "penalties." Report, June 11, 2013 [#34-10] at 2, 12 (his pagination).

If, as I conclude, the statute creates a penalty, then the claim to recover the penalty is not assignable. *See Kruse,* 178 P.3d at 1201; *US Fax Law Center, Inc. v. iHire, Inc.,* 362 F. Supp. 2d 1248, 1253 (D. Colo. 2005). That is because the plaintiffs have no entitlement to recover the penalty absent the assignment, and therefore, they lack standing to pursue the claim.[3]

**Order**

Defendant's motion for partial summary judgment [#29] is granted in part and denied in part.

DATED this 16th day of December, 2013.

BY THE COURT:

R. Brooke Jackson
United States District Judge

---

[3] Incidentally, although neither parties addressed it, C.R.S. § 10-3-1115(b)(II)(B) could potentially be interpreted as pointing to the same result. This section provides that the term "first-party claimant" does not include "[a] person asserting a claim against an insured under a liability policy." It has been suggested that this language was intended by a proponent of the statute "to preclude claims by individuals who were assignees under *Bashor* agreements." Erin Robson Kristofco, *CRS §§ 10-3-1115 and -1116; Providing Remedies to First-Party Claimants*, 39 COLO. LAW. 69, 70 (JULY 2010). A Bashor agreement, named after the plaintiff in *Northland Ins. Co. v. Bashor*, 177 Colo. 463 (Colo. 1972), is "a settlement reached between opposing parties after a judgment has been obtained against the defendant" whereunder "[t]he prevailing party agrees not to execute on the judgment in exchange for the defendant's agreement not to appeal the judgment and instead to pursue claims against their parties (and share any recovery with the original plaintiff)." *Stone v. Satriana,* 41 P.3d 705, 708 n.2 (Colo. 2002). The arrangement here could be viewed as akin to a Bashor agreement.